I think we're ready to go, Mr. McKeon. Thank you, Your Honor. This case involves a child who's now 19 years old. He cannot speak. He cannot go to the bathroom by himself. He is totally dependent on his parents. This case screams for an appeal, and the government is basically saying that it should not have been appealed. Even though the standard of review is arbitrary and capricious, there is such a thing as abusive discretion. And there are certain rules imposed by this court on how these cases are to be heard. Can I just ask you something? This is not merits related. This is just so I'll understand what the record is in terms of what's at stake here. So there's 1,500 and change hours for attorney's fees in the post litigation. But are you seeking here just, and tell me if these numbers are right, I'm getting them from the Court of Claims opinion, that 160 hours deals with the appeal process. So is what's at stake in this case just that 160 hours? That's all there is, Your Honor. This is strictly about whether it was, whether we had reasonable cause to appeal. And the court below, I mean the, yes, the court below and the special master rule, there is no reasonable basis for appeal. The problem with that, of course, is we are in a program where parents cannot hire a lawyer. Can I just ask you one more specific question, which is, have you allocated what portion, I mean you've got several arguments around here. One is the substantial evidence and the other is this question of Millick and the constitutional argument. Do you have any sense for what portion of that 160 hours that's on appeal is allocated between those two questions? No, Your Honor. I would say I could not, I couldn't divide it like that, no. I just have no idea. Counsel, in Millick, you had, in fact, were you the same counsel there? No, I was not. In any event, Millick was the And whether to award fees for a further appeal was discretionary. And you did get some. You got over $200,000. So why was there an abuse of discretion in not awarding more when the issue had already been decided? Well, the issue had been decided by this court, but in Millick, they filed a petition for certiorari. And unlike most petitions of that kind, the Supreme Court asked the government to respond to that petition. So obviously somebody in the Supreme Court took that argument as serious. And so when, even though this court ruled against us on this issue, the Supreme Court had some problem with that. Do you have any idea of what percent of our 500 plus decisions every year get granted certiorari by the Supreme Court even when they ask for the views of the SG? Well, I know it's very, very slim. It's pretty slim. It's pretty slim. So therefore, how could it have been an abuse of discretion for the court not to have awarded more than 200 something thousand in fees? Well, there's a different law firm, but basically the fact of the matter is there had been no final decision on the Millick case until the Supreme Court said no. And that was six months after this case was completely over. So while this... Do you know if our court is required to follow its precedent, particularly after a denial of rehearing en banc, can we not rely on that precedent until and unless the Supreme Court has finally denied cert? Yes, you can. But of course... So that would be precedent that would be governing our court, regoverning your court, whether or not the Supreme Court has done it. You just made a comment, and I'm just interested, so I don't want to put you on the spot, but you said the rare... You discussed the rarity of the Supreme Court asking for a response. Do you have any numbers on that? No, I do not. I don't. Now, in response to the Chief Judge's question about whether we can rely, and you said, yes, you can, we must follow our own panel decisions. Unless we go en banc. Yes, yes, absolutely. I mean, you can always overrule it if you wish to, but that requires... En banc. En banc. Only en banc. En banc, yes. So that can happen. How much time was there between when the Millick opinion issued and when you filed your brief? I think that that Millick decision, I don't know. I think it was after we filed our brief, the decision came down, but the... What if the decision came down seven days before you filed your brief? Would that make a difference? Seven days? It probably would, yes. I frankly don't remember the schedule there. I just know that while the case was pending here, the whole case, there was no final decision from the Supreme Court, so we relied on that as saying that the argument was viable until the Supreme Court said it wasn't, and that was six months after this case was over, so that's the issue. You also, in the Millick case, there was some sort of petition seeking en banc review in this court, right? Yes, and that was denied. Right. So, okay. So if we disagree with you on the Millick question, what are we left... Are we left with any further arguments with regard to the 160 hours? No, not really, basically. The 160 hours, of course, there are two. There were two questions before the court. One was the actions of the special master in denying the claim, and in that case, we have a situation where the special master essentially refused to pay any attention to the treating physicians, and there were a lot of them, and relied upon speculation that none of them had done their job, and it was... Did the special master make credibility determinations? She did, but she basically did not... Well, she sort of did, but this case, the treating physician, the man who gave the shot, it was somebody who knew that child from birth. Then he discovers the autistic condition a week later at a family party and refers the to other doctors. His opinion that the child was... That the vaccination caused the injury because he knew the child before, he knew the child after, and he saw the entire scene, that was completely discounted by experts from elsewhere. And one, the case was essentially lost on videotapes, where a psychologist, a fairly new psychologist, is disagreeing with expert witnesses and family members, et cetera, who have years of experience, and there is such a thing as abusive discretion, and she and the person who criticized her, our expert was Dr. Shafir, who said the criteria that she is using to look at these videotapes can be seen in any child, any child, and there is no way to discern what is going to be autistic and what isn't. It's too early. It can't be done. And she agreed that what she was looking at was stuff that was very subtle, very hard to discern, and the excuse was, well, these criteria that she was using had not been developed yet. We are talking about expert witnesses who have been dealing with autistic children for years, thousands of cases, and all of a sudden... And of course, the assumption the special master makes is these people are not keeping current. But Shafir said he knew all about what she was talking about and said he couldn't be relied upon. Can I go back to you, back with you on the Millick point for a minute? In your briefing, your opening brief argued this constitutional point, I guess, seven days after this court issued its decision in Millick. But do you know what the relative timing was? I mean, I presume a lot of appellate briefs are prepared well in advance of seven days before a brief being due. That brief took quite a bit of time, so... How did your constitutional argument in the breadth and detail with which you argued it compare to the way it was argued in Millick? Do you know the answer to that question? No, I don't know the answer to that. I wasn't there for Millick. I understand Millick, it was... But you could have looked at the briefs in Millick. I looked at the briefs in Millick and Mr. Krakow... How did that look compared to the brief that you filed? The father here, Mr. Krakow... I understand. I just, you know, I'm trying to help you. Yes. Okay, so did your discussion of Millick, was it more extensive? Is your discussion of the constitutional issue more extensive and make more points than had been made in Millick? Far more, far more. Mr. Krakow had thrown this in as an aside. We focused on it because our position is, of course, that if you do not have access to an article that is basically removed from Article III courts by Congress, there must be open access to an Article III court at some point in the process or there's a constitutional problem. And we're saying here the same thing applies. If indeed the merits appeal in this case with regard to the special master's decision is a good appeal, she did do things that are questionable. If a lawyer can now be denied all fees for a merits appeal that's not frivolous, I mean, all through this case, everybody had said this was not a frivolous appeal. That's not the standard, right? Is that the standard? What? Whether it was frivolous or not? Well, they're saying it isn't the standard. I mean, basically, if there's a frivolous case, there's no reason to pay attorneys for that. But you agree that's not the standard? That is not the standard, but they're trying to... That's not the standard that the Court of Federal Claims applied here, right? Well, no. The Court of Federal Claims said that there is an issue of whether there's any merit to this good reason to bring the claim. And our position was, yes, there was plenty of good reason about the facts. But we're also saying that if indeed you cannot... I mean, we have the issue of how those facts are evaluated. Because even under the arbitrary and capricious standard, there is always the abuse of discretion. And where you have a record like this, whether we went through every analysis of every expert, was essentially the government's expert was right, and the other people hadn't done their job. And this involved... I mean, we were talking about a disease, a mitochondrial disease, where there was only about 30 experts in the United States. And we had four of them on this case. And one, the government's expert, admitted he disagrees with everybody. Yet he was accepted, and the others were dismissed. And they're all experts. And several of them were treating physicians. There was one expert who was just an expert. But they were treating physicians that Dr. Boris had sent the child to validate whether this was a mitochondrial case or not. And Dr. Shofir, who did the tests, and then the three experts up in Boston, all agreed that this was more likely than not. Mitochondrial disease is a disease that they cannot definitively diagnose. I think you're arguing facts. Yeah, well, I'm sorry, sir. I shouldn't be. Why don't you hear from the other side? Good morning. May it please the court. Because petitioners were not awarded compensation in this Vaccine Act case. They were not entitled to attorney's fees and costs as a matter of right. Rather, any award was purely discretionary by the special master. Can I direct you to page seven in the appendix? And this is the Court of Claims opinion, I guess, which just, I'm just looking at it because I'm looking for a summary of what basis was here. So on the top of that page, I think they summarized that they were, effectively, there's an overlap here, but there were sort of several bases for the vaccine special master to decline attorney's fees. The first seems to be the fact that we 36 the original case, right? Correct. That is one, yes. And the second seems to be that we had already rejected the constitutional argument in another case, Millick. And then the third, just legal meritless. Can I ask you, I'm going to direct your attention to the first two. Isn't it a little dubious to be relying on the fact that we just 36 it and we 36 a lot of cases? I don't know that that speaks to anything other than there's a summary affirmance of the opinion to suggest that that means that it didn't have any merit or that it was not reasonable is a bit of a stretch, is it not? Only this court knows why you decide to do rule 36 dismissal, but the special master was very clear that it was just one of the reasons that he decided that attorney's fees. Okay, so let's go to the second, which is the Miller case. And even though your friend didn't press this point, I think Judge Stowe alluded to the fact that as we see the record, Millick was decided one week before the appellant's blue brief was filed in this case. Correct. And if that's the case, and if, in fact, most people, one would think, would write the brief or do most of the preparation work more than one week before, why shouldn't he at least be credited? Even if we reject his notion about Supreme Court and all that stuff, why shouldn't he at least be credited with the cost of that initial brief? Had he stopped there, I think there's a good chance the special master would have credited him, but he did not. The special master in evaluating Millick and whether or not that was a reasonable, the constitutional argument brought in Millick still going on, whether or not that was reasonable, he said it wasn't for several reasons. And these reasons pre-existed the briefing and after the briefing. First being, this court's standard of review has been clear for 25 years. There is no question about what the standard of review is. This court unanimously, 3-0, said the petitioner's brief, petitioner's appeal on this issue had no merit. You're saying even aside from Millick, the issue was not really meritorious? Correct. But I think even if you put all of that aside, and the special master addresses this in his opinion, even if you put all of that aside and this court did say, or the Supreme Court did say that the standard of review was unconstitutional and that this court should be reviewing this case de novo, it all comes back to the fact that the facts of the case, in every single instance, every single factual determination and credibility determination went against the petitioner. But that's a little attenuated, right? You're not saying if there's a, if you think he's wrong on the facts, then he shouldn't be able to the standard of review? I say that he would not have prevailed under any standard of review. But we have, looking at this case kind of upside down and backwards, we've got a lot going on in our jurisprudence with regard to whether or not someone preserved their rights to argue something, because we've got a lot of cases where there's intervening Supreme Court law. And preservation is a pretty important deal. So if he had, let's assume Millick went the other way, or let's assume the Supreme Court granted cert, stranger things have happened. And he did exactly what he needed to do in this case, right, by preserving that argument by at least arguing it in blue brief, right? Yes. So why isn't that kind of enough in the context of this whole case to say, at least with respect to the blue brief, he was in a position of appropriately preserving that right? And if you could clarify, is your answer, which may be a good one, which is that he wasn't arguing that. He was arguing only the whole search deck, which went on for a protracted period of time. He was not isolating the blue brief. Correct. And the special master has that discretion. The standard of review, purposely by Congress, was to give the special master the flexibility to look at everything that is happening and decide whether or not there's a reasonable basis to bring the claim, and whether or not there's a reasonable basis for the claim to continue. And that includes the appeals. The special master looked very carefully at the, sorry, there were two special masters in this case, just to clarify. There was the special master who heard the case and wrote the decision, and then the special master who determined fees. The special master who determined fees looked at the special master's 21-page thorough decision and said, I don't think there was a reasonable basis to appeal this case. But yet... Except he has no way of knowing necessarily whether if the standard of review were different or flipped, the case might look a lot different, right? I think, well, he made clear that it doesn't matter whether or not the standard of review changed. Petitioners lose this case. No, what I think a lot of people were saying was Millick was decided. We had already decided Millick. That's a different point. That may be a very good one if you're right on the facts underlying that. But that's what he was saying, right? He said both things. He said Millick was decided.  This is appendix at page, it's pages 20 and 21. What specific language are you relying on for him saying even if they had been successful in Millick, they didn't have a reasonable chance of succeeding on appeal? Page 21, the last sentence of this section. Well, the whole last paragraph. Starting second. Sorry, exactly. Even in the unlikely event the Federal Circuit overturned its own precedent and applied a different standard of review, and even if the circuit considered the factual issues de novo, there is still no reason based on the existing record to speculate that the Federal Circuit would have reached a different conclusion than Special Master Vowell. Upon my own review of Special Master Vowell and Judge Braden's decisions, I find the weight of the evidence going to core aspects of petitioner's claim means so far against petitioner's claim that such an outcome would be highly unlikely. And I direct you to the Special Master's summary of her decision, which is appendix page 1732, in which she summarized the next 150 pages, which says... What about the fact that the Supreme Court asked for the views of the Solicitor General? And time-wise, how does that relate to the expenditure of money on the appeal? I don't know what the Supreme Court standards are for asking for a response from the government. Well, they don't do it on most of the appeals. If you say so, Your Honor, I believe you. Can I just clarify? Sure. There are two different things I've got in my brain with respect to responses. Okay. There's when the Supreme Court has a petition in front of it, and it asks for the views of the Solicitor General. That, I think, is a fairly big deal. But I understood, so maybe I'm wrong, the response we're talking about here is not a specific request for the SG's views, but it's simply every time somebody files a cert petition, it's up to the other side whether they want to file a response, and many times they don't. The Supreme Court just says, file a response. Which bucket is this one? The latter bucket. I did not actually see what the solicitor filed, but my understanding, it was perfunctory at best. But the Supreme Court denied certiorari after that, so they did not believe that it was worthy of their attention. There are no further questions. We believe the Special Master did not abuse his discretion, and we respectfully request that you affirm. Thank you. I will say that as Mr. Krakow was... Sorry, I can't... Mr. Krakow is the father of this child. There was extensive review of the Milken case as it proceeded at every stage, and our decision to continue this was based upon the fact that there was some interest shown at the Supreme Court, and we thought we had a chance, just a chance. But we had basically, we could not abandon the claim. Do I understand correctly, Mr. Krakow was the attorney in the Millick case? He was the attorney in the Millick case. And he's the petitioner here? Yeah, he's for his son here. His son is the petitioner here. And he filed the cert petition? He filed the cert petition. So we knew what was happening in the Millick case at all times. But we deemed both the Millick case and now this case to be extremely important because essentially, if indeed, attorneys have to worry about whether they're going to be second guessed as to whether there was good grounds for something, and they could not get paid, means that petitioners just are not going to be able to get lawyers to go beyond a decision by the Supreme Court. You're saying then that an abuse of discretion always exists when the attorneys don't get their fees paid? Oh, no, no, no. I mean, there's no... The abuse of discretion standard implies that there are some denials. There are always some denials. There are some frivolous cases. But our position is, if it's a good case... Frivolousness isn't the test, is it? Well, frivolous, yes. For denial of fees for an appeal, that should be the test. Is it the test under our case law? No, it's not the test. Okay. Well, you're not arguing here that we ought to change the... No, I'm not. Maybe you are. No, well, there's a lot of things I'd like to see changed, but no, I'm not arguing that formally. I'm saying basically, we cannot allow a situation to arise where lawyers who are already reluctant to participate in this program become more reluctant to go to appeal when they believe something is wrong, but they're not sure that they're going to get paid for it. Is that true, that lawyers are reluctant to take these cases when they generally get paid, even if they lose? Your Honor, I haven't looked at the statistics in the last five years, but five years ago, there were 182 vaccine lawyers in the United States, despite the fact that they were going to get paid. At that time, when I did that paper, it was a long time ago, and it was not for the court, it was an academic paper. It was easier for a wounded dog to find a lawyer than it was for a vaccine in your child. So something is wrong. But looking at the numbers here, there was 1,500 hours billed post-litigation, right? And we're only talking about the appeal as being 160 of those 1,500. So you got the remainder of that, right? We got the remainder of that, but the problem is, will anybody take an appeal? I mean, basically, the Court of Claims has said it's okay to go to the Court of Claims, but it's not okay to go anyplace else. And that's, you know, an awful lot of the way we live today is based upon reversals of court precedent. So we can't make it difficult for lawyers to make that decision. And I know that some simply are not going to take appeals because of this case. And I think that has to be modified. Okay, we've run out of time. Thank you. We thank both sides. The case is submitted. And we'll take a brief recess at this meeting. All rise.